**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

| | |
|---|---|
| **CARLAS D.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 25-cv-1041-TMP** |
| ) | |
| **FRANK BISIGNANO,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

---

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

---

On February 13, 2025, Carlas D. ("Plaintiff") filed a written request seeking judicial review of a social security decision.[1] (ECF No. 1.) Plaintiff seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability insurance benefits and Title XVI supplemental social security income.[2] (ECF Nos. 1, 13.) For

---

[1] After the parties consented to the jurisdiction of a United States magistrate judge on April 23, 2025, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 11.)

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the following reasons, the decision of the Commissioner is AFFIRMED.

## I.    BACKGROUND

On March 14, 2022, Plaintiff filed her application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 404-434. (ECF No. 10 at PageID 32.) On September 29, 2023, she also filed an application for supplemental security income under XVI of the Act. (Id.) In both applications, she alleged that her period of disability began on March 1, 2022. (Id.) Plaintiff's claim was initially denied in January of 2023, and was again denied upon reconsideration on July 10, 2023. (Id.) She then requested a hearing before an Administrative Law Judge ("ALJ"). (Id.)

The hearing before the ALJ was held telephonically on February 27, 2024. (Id. at PageID 43) The ALJ found that the Plaintiff was not disabled. (Id.) Subsequently, Plaintiff requested review by the Appeals Council, who denied that request on March 1, 2024. (Id. at PageID 22.) Plaintiff appealed the matter to this court on February 13, 2025. (ECF No. 1 at PageID 1.) Due to the denial of the Appeals Council to hear Plaintiff's appeal, the February 27, 2024 decision in which the ALJ denied Plaintiff benefits represents the final decision of the Commissioner.

In that decision, the ALJ considered the record and the testimony given at the hearing, then used the Act's required five-

step analysis to conclude that Plaintiff is not disabled for the purposes of receiving Title II and XVI benefits. (ECF No. 10 at PageID 35-42.) The ALJ began by noting that the Plaintiff met the insured status requirements of the Act and that although she engaged in substantially gainful activity after her alleged date of disability onset, there had since been a continuous twelve-month period during which the Plaintiff did not engage in substantially gainful activity. (Id. at PageID 35.)

The ALJ next found that Plaintiff has the following severe impairments, which significantly limit her ability to perform basic work activities: below the knee amputation of the left lower extremity, post-traumatic stress disorder, and major depressive disorder. (Id. at PageID 36.) The ALJ then concluded that despite these severe impairments, the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Id.) The ALJ specifically looked at listing 1.20 for amputation due to any cause. (Id.) She found that Plaintiff

> has a below the knee amputation but does not have an
> inability to use a prosthesis, a complication on the
> residual limb that has lasted or is expected to last
> twelve months or more and a documented medical need for
> a walker, bilateral canes, or bilateral crutches or a
> wheeled and seated mobility device involving the use of
> both hands.

(Id.) The ALJ also considered Plaintiff's mental impairments and found that "considered singly and in combination, [they] do not meet or medically equal the criteria of listings 12.04 and 12.06." (Id.)

The ALJ then determined Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry no more than 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in [a]n 8 hour day, stand and walk for 4 hours in an 8 hour day, cannot push or pull with the left lower extremity, no climbing of ladders, ropes or scaffolds, occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, crawling, avoid even moderate exposure to unprotected heights and moving machinery, can interact appropriately with supervisors and coworkers, only occasionally with the public and can adapt to occasional changes in the workplace.

(Id. at PageID 37.) To reach this conclusion, the ALJ first determined whether there were underlying medically determinable physical or mental impairments that could reasonably be expected to produce Plaintiff's pain or symptoms, then evaluated the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's work-related activities. (Id.) The ALJ found that the Plaintiff's medically determinable impairments could be reasonably expected to cause her symptoms. (Id.) However, the ALJ concluded that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not "entirely consistent

- 4 -

with the medical evidence and other evidence in the record[.]"
(Id. at PageID 38.)

The ALJ reviewed the Plaintiff's testimony along with the
reports of consultive psychologist Dr. E-Ling Cheah, consultive
physician Dr. Roderick Webb, and Plaintiff's treating physician
Dr. Marc Tressler. (Id. at PageID 40.) At the hearing, Plaintiff
"testified that she is unable to work due to pain." (Id. at PageID
38.) She stated that "she has nerve issues in her leg" and "a below
the knee amputation of the left leg." (Id.) Plaintiff said that
"she [wore] a prosthetic up until her most recent surgery in
November 2023[,]" which was intended to "try to 'kill' the nerve."
(Id.) She further stated that she "has had knee injections" and
"will need additional surgeries[,]" including a knee replacement.
(Id.) Plaintiff elaborated that "she has pain with standing,
walking and sitting[,]" but "does not have serious side effects
from her medications." (Id.) She testified that "she uses a cane
to help take pressure off of her leg." (Id.) As to her mental
symptoms, she stated that "some days she does not want to get out
of bed." (Id.)

On December 12, 2022, Plaintiff had an evaluation with
consultive psychologist Dr. Cheah. (Id.) Dr. Cheah reported that
Plaintiff "received her last mental health treatment at
[seventeen] years old." (Id.) Although Plaintiff was "oriented to
person, place, and time[,]" "able to recall[,]" and "follow

- 5 -

instructions and complete simple math[,]" she had "a sad and depressed mood." (Id.) Dr. Cheah diagnosed Plaintiff with "major depressive disorder, unspecified trauma and other stressor." (Id.) The ALJ did not find this opinion persuasive because it was "not expressed in appropriate vocational terms for assessing mental limitations." (Id. at PageID 40.)

In January of 2023, Plaintiff had a consultive physical evaluation with Dr. Webb. (Id. at PageID 39.) Dr. Webb found that Plaintiff "had normal findings in the back, cardiovascular system, chest, lungs, and neck[,]" but had a "left below the knee amputation (BKA) with the stump incision closed and the start of a pressure injury on the bottom." (Id.) He found that Plaintiff "had normal station with a limp gait with prosthetic and did not use ambulatory device" and "was able to get out of chair and on and off the table with no difficulty." (Id.) The ALJ found Dr. Webb's report partially persuasive, stating that "Dr. Webb's opinion limiting the claimant to a range of light work is generally consistent with the objective medical evidence as a whole for the period in question, but he did not address additional[] limitations such as postural and environmental limits that are supported by the evidence." (Id. at PageID 40.)

The ALJ also found the opinion of Plaintiff's treating physician, Dr. Tressler, not fully persuasive. (Id.) "Dr. Tressler found that the [Plaintiff] could lift at the light level of

exertion and had occasional postural restrictions [which the ALJ found were] supported by Dr. Tressler's treatment notes." (Id.) Dr. Tressler was the physician who performed Plaintiff's November 2023 surgery and noted that she "would be able to wear a prosthetic once healed[.]" (Id.) Although the ALJ found some of Dr. Tressler's opinions persuasive, she found other suggested restrictions unpersuasive, such as his suggestion that Plaintiff had compromised attention and concentration due to pain. (Id. at PageID 40-41.)

The ALJ also discussed whether the Plaintiff needs an assistive walking device, such as a cane or crutches. (Id. at PageID 39.) Treatment notes indicated that Plaintiff used an "assistive device" at several appointments. (Id.) However, the ALJ stated that "the notes did not specify whether this was a cane or whether this was referencing her prosthetic" and that "[t]he record does not have any discussion or observation of the need for a cane or a walker." (Id.) She further asserted that "in June 2022, the claimant had a normal gait with no noted use of an ambulatory device[.] (Id.) The ALJ then stated that "while [Plaintiff] may have required an assistive device for a few doctor visits, prior to that and after that time there is no indication of a need for an ambulatory assistive device. Thus, the claimant did not rely on an assistive device throughout the period in question." (Id. at PageID 40.) She noted that at the hearing Plaintiff "testified

- 7 -

that she was not able to wear her prosthetic due to a recent surgery in the month prior to the hearing" and that "[s]he was using a walker or crutches[.]" (Id.) However, the ALJ concluded that "the evidence does not show that [Plaintiff] will be precluded from wearing her prosthetic once she has a reasonable recovery period[,]" and that "it [did] not appear that any use of an assistive ambulatory device [would] continue for twelve months or more." (Id.) Ultimately, the ALJ found that Plaintiff had the RFC of light work with limitations, "which [was] supported by the totality of the evidence." (Id. at PageID 37, 41.)

After making the RFC determination, the ALJ found that Plaintiff was "unable to perform any past relevant work" and that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform[.]" (Id. at PageID 41.) The ALJ relied on the testimony of the vocational expert, who suggested that Plaintiff could work as a "marking clerk" or "inspector/hand packager[.]" (Id. at PageID 42.) The ALJ concluded that Plaintiff is not disabled and "has not been under a disability, as defined in the Social Security Act, from March 1, 2022, through the date of [her] decision[.]" (Id.)

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)); Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)); see also Foltz obo R.B.K.F. v. Comm'r of Soc. Sec., No.

23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs., 893 F.2d 106, 108 (6th Cir. 1989)); Marquitta B. v. Comm'r of Soc. Sec. Admin., No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)); see also Floyd v. Comm'r of Soc. Sec., No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); see also Robbins v. Comm'r of Soc. Sec., No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

- 10 -

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove they have a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F.4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173;

- 11 -

see also <u>Griffith v. Comm'r of Soc. Sec.</u>, 582 F. App'x 555, 559
(6th Cir. 2014).

Entitlement to social security benefits is determined by a
five-step sequential analysis set forth in the Social Security
Regulations. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. First, the
claimant must not be engaged in substantial gainful activity. <u>See</u>
20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be
made that the claimant suffers from a severe impairment. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the
ALJ determines whether the impairment meets or equals the severity
criteria set forth in the Listing of Impairments contained in the
Social Security Regulations. <u>See</u> <u>id.</u> §§ 404.1520(d), 404.1525,
404.1526. If the impairment satisfies the criteria for a listed
impairment, the claimant is considered to be disabled.

On the other hand, if the claimant's impairment does not meet
or equal a listed impairment, the ALJ must undertake the fourth
step in the analysis and determine whether the claimant has the
RFC to return to any past relevant work. <u>See</u> <u>id.</u> §§
404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the
claimant can return to past relevant work, then a finding of "not
disabled" must be entered. <u>Id.</u> But if the ALJ finds the claimant
unable to perform past relevant work, the ALJ must proceed to the
fifth step, where they determine whether the claimant can perform
other work existing in significant numbers in the national economy.

See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

**C.    Substantial Evidence Supports the ALJ's Finding that Plaintiff's Impairments Did Not Meet or Medically Equal a Listing**

Plaintiff argues that the ALJ did not have sufficient evidence to conclude that her below the knee amputation did not meet or medically equal a listing. (ECF No. 13 at PageID 524.) She states that she "was diagnosed with left below the knee amputation with a wound on the prosthetic site[,]" "testified that she had a below the knee amputation on her leg in June of 2014 after her accident[,]" and "had 15 surgeries on her leg."(Id.) She notes that "she wore a prosthetic on her leg up to her most [recent] surgery [on] November 1[,]" in which her "doctors had to re-amputate her leg[.]" (Id.) She states that she testified that before the surgery, "she used a cane to walk due to the rubbing and sores[,]" and is "in more pain now that she was previously" and "uses crutches and a walker." (Id.) Citing a case from the Fifth Circuit, she suggests that the ALJ failed to perform the required step three analysis for determining if an impairment meets or medically equals a listing and further failed to set this out in her decision. (Id. at PageID 525.) She takes issue with only the decision regarding the below the knee amputation and the

- 13 -

finding that her amputation does not meet or medically equal
listing 1.20. (Id. at PageID 524.)

At Step Three, the ALJ "asks whether the claimant satisfies
a listed disability." 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). The Listing of Impairments, located at
Appendix 1 to Subpart P of the Regulations, describes impairments
the Commissioner considers to be "severe enough to prevent an
individual from doing any gainful activity, regardless of his or
her age, education, or work experience." 20 C.F.R. §§ 404.1525(a),
416.925(a). If a claimant's impairments meet or equal a listed
condition, then the ALJ must find the claimant disabled. Id. Each
Listing specifies "the objective medical and other findings needed
to satisfy the criteria of that listing." 20 C.F.R. §§
404.1525(c)(3), 416.925(c)(3). A claimant must satisfy all of the
criteria to meet the Listing. Rabbers v. Comm'r of Soc. Sec., 582
F.3d 647, 652 (6th Cir. 2009); Michelle D. v. Comm'r of Soc. Sec.,
No. 3:24-cv-205, 2025 WL 2774882, at *3 (S.D. Ohio Sept. 30, 2025).

In her decision, the ALJ stated that Plaintiff's "impairment
does not meet or medically equal listing 1.20 for amputation due
to any cause." (ECF No. 10 at PageID 36.) She then explained her
reasoning:

> [Plaintiff] has a below the knee amputation but does not
> have an inability to use a prosthesis, a complication on
> the residual limb that has lasted or is expected to last
> twelve months or more and a documented medical need for
> a walker, bilateral canes, or bilateral crutches or a

wheeled and seated mobility device involving the use of both hands.

(Id.) Listing 1.20 has four subsections. 20 C.F.R. Pt. 404, subpt. P, app. 1, § 1.20. Section 1.20A through 1.20C are inapplicable to Plaintiff's case because they require, respectively: (A) "[a]mputation of both upper extremities," (B) "[h]emipelvectomy or hip disarticulation[,]" and (C) "[a]mputation of one upper . . . [and] one lower extremity[.]" Id. at § 1.20A-C. Section 1.20D requires "[a]mputation of one or both lower extremities, occurring at or above the ankle [], with complications of the residual limb(s) that have lasted, or are expected to last, for a continuous period of 12 months," as well as both "1. the inability to use a prosthesis(es); [and] 2. [a] documented medical need . . . for a walker, bilateral canes, bilateral crutches . . . or a wheeled and seated mobility device involving the use of both hands[.]" Id. at § 1.20D. As is noted above, the ALJ found that the criteria of Listing 1.20D were not satisfied because the record did not show (1) that Plaintiff was unable to use a prosthesis or (2) a documented medical need for an assistive device. (ECF No. 10 at PageID 36.) The ALJ is correct in this assertion; Plaintiff does not satisfy every element of Listing 1.20. The evidence and reasoning are sufficiently set out in the ALJ's decision. Therefore, there is substantial evidence in support of the ALJ's

conclusion that Plaintiff's impairments do not meet or medically equal Listing 1.20.

**D.    Substantial Evidence Supports the ALJ's Finding That Plaintiff's RFC is Light Work with Limitations**

Plaintiff argues that the ALJ's RCF determination is inadequate for several reasons. First, Plaintiff argues that the ALJ erred in finding a "non-examining contractor's opinions more persuasive." (ECF No. 13 at PageID 523.) She states that Dr. Tressler was her surgeon, so he knew her "impairments well and examined her[.]" (Id.) She continues: "[t]he ALJ failed to evaluate the examining physicians' findings and opinions under all of the 20 CFR 404.1520c and [4]16.920c factors" and "instead summariz[ed] records and notes she thought were important and evaluat[ed] evidence and reports based on her own substituted opinions."[3] (Id. at PageID 527.) She claims that "[f]ailure to consider and explain each factor is a failure to comply with the agency's own regulations and requires remand." (Id.) Without citing any opinion stating as much, she avers that "[a]ccording to the Supreme Court, DDS form opinions are not substantial evidence." (Id. at PageID 528.) She then "urge[s]" the court to find that "Dr. Roderick Webb

---

[3]In several places, Plaintiff refers to 20 CFR § 916.920c, while in others she refers to 20 CFR § 416.920c. (Compare ECF No. 13 at PageID 527 with id. at PageID 526.) Since Social Security Regulations are contained within 20 CFR § 401.5 to § 498.224, the undersigned has inferred that the Plaintiff intended to refer to 20 CFR § 416.920c where she has written 20 CFR § 916.920c.

and Dr. Marc Tressler['s] opinions are most persuasive" and remand
the case. (Id.) The Plaintiff further argues that "[t]he ALJ did
not follow the regulations regarding the evaluation of medical
opinion evidence[,]" specifically 20 CFR § 404.953, and that the
"ALJ's decision must be vacated" because "it is not supported by
'substantial evidence'." (Id. at PageID 528-29.)

    An ALJ must evaluate medical opinion evidence and prior
administrative medical findings according to 20 C.F.R. §§
404.1520c and 416.920c. When evaluating this evidence, the ALJ
must consider the following factors: supportability, consistency,
the relationship with the claimant, specialization, and other
relevant factors, such as a familiarity with disability program
policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c),
416.920c(c). The most important factors, however, are consistency
and supportability. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). The
ALJ is only required to articulate how she considered the remaining
factors when there are two or more non-identical opinions on the
same issue that are equally well-supported and consistent with the
record. 20 C.F.R. §§ 404.1520c(b)(2), (3); 416.920c(b)(2), (3).
There are no such opinions in this case, so the ALJ was not required
to articulate how she considered any except the two most important
factors of supportability and consistency.

    The ALJ described her consideration of each medical opinion
and prior administrative medical findings. (ECF No. 10 at PageID

- 17 -

38-41.) To begin, she discussed Plaintiff's evaluations by or appointments with each of the medical sources and described what findings, if any, were made. (Id. at PageID 38-39.) She then discussed how persuasive she found each source, specifically commenting on their consistency and supportability. (Id. at PageID 40-41.) (Id. at PageID 40) Thus, Plaintiff's claim that the ALJ did not appropriately consider the §§ 404.1520c and 416.920c factors is unfounded. Further, this also provides an example of how the ALJ did more than summarize the medical evidence. Not only did she provide a summary of the evidence in her decision, but she also proceeded to evaluate the evidence. (Id. at PageID 40-41.) Thus, Plaintiff's claim that the ALJ did no more than summarize evidence is not well taken.

As to the Plaintiff's argument that the opinions of Drs. Webb and Tressler should be given more weight, the ALJ already accepted nearly all the RFC suggestions made by the two physicians, though this is not necessarily evident from the ALJ's opinion. (Id. at PageID 37, 473, 498-501.) In her analysis of the medical opinions, the ALJ discussed Plaintiff's consultive physical examination with Dr. Webb first.  (Id. at PageID 39.) She stated that Plaintiff "had normal findings in the back, cardiovascular system, chest, lungs, and neck" and "was noted [by Dr. Webb] to have a left below the knee amputation (BKA) with the stump incision closed and the start of a pressure injury on the bottom." (Id.) Dr. Webb also

- 18 -

found that Plaintiff "had 5/5 strength and n[o] tenderness, redness, swelling, spasm or edema[,]" "had normal station with a limp gait with prosthetic and did not use [an] ambulatory device." (Id.) The ALJ later concluded that she found this opinion "partially persuasive" because although "Dr. Webb's opinion limiting the claimant to a range of light work [was] generally consistent with the objective medical evidence as a whole for the period in question, . . . he did not address additionally limitations such as postural and environmental limits that are supported by the evidence." (Id. at PageID 40.) Despite this, the ALJ accepted and adopted all the limits Dr. Webb suggested either at the level he recommended or with additional restrictions. (Id. at PageID 37, 473.) The ALJ specifically commented on the consistency and supportability of Dr. Webb's opinion and appropriately relied on Dr. Webb's examining opinion.

The ALJ also considered Dr. Tressler's evaluation. (Id.) "Dr. Tressler found that the [Plaintiff] could lift at the light level of exertion and had occasional postural restrictions[, which the ALJ found was] supported by Dr. Tressler's treatment notes." (Id.) She also stated that "[t]he limitation to light work is also consistent with the treatment notes as a whole which show that the [Plaintiff] often had normal findings[.]" (Id.) As an example, she offered that "Dr. Tressler performed the surgery on the [Plaintiff]

- 19 -

and noted that the [Plaintiff] would be able to wear a prosthetic once healed[.]" (Id.)

However, the ALJ noted that she was not persuaded by some of the other restrictions Dr. Tressler recommended. (Id.) She stated that Dr. Tressler's suggested limitation that Plaintiff could stand and walk at least two hours was not "vocationally specific enough to allow for appropriate evaluation" because it only stated the least the Plaintiff could do, not the most she could do. (Id. at PageID 40-41.) Similarly, she found that the limit Dr. Tressler put of Plaintiff pushing and pulling with her lower extremities and his suggested environmental restrictions were "not clearly defined or qualified." (Id. at PageID 41.) She also found that Dr. Tressler's suggestion that the Plaintiff "would have significantly compromised attention and concentration due to pain" was not persuasive because he "failed to provide any specific restrictions." (Id.) Additionally, the ALJ noted that "Dr. Tressler's indication the [Plaintiff] would need upper extremity limitations is not supported by the objective medical evidence as the record does not show that the claimant had any balance issues or difficulty with reaching." (Id.)

Ultimately, however, the ALJ accepted and adopted nearly all of the limitations suggested by Dr. Tressler (Id. at PageID 37, 498-501.) The only limits the ALJ specifically did not accept were the limit of occasional overhead reaching due to balance issues on

prosthesis and avoiding humidity and wetness because it "negatively effects fit of prosthesis causing instability [and risk of] fall[ing.]" (Id. at PageID 37, 501.) As described above, the ALJ found that these limits were not supported by the record. (Id. at PageID 41.) Further, as to issues with concentration, the ALJ correctly asserted that though Dr. Tressler noted Plaintiff may encounter "bouts of severe pain" and it was "medically reasonable to expect that [Plaintiff's] ability to maintain attention and concentration on work tasks throughout an [eight] hour day is significantly compromised by pain," he does not suggest any limitation. (Id. at PageID 500.) Further, the ALJ's RFC limitation that Plaintiff can stand or walk for four hours in an eight-hour day is not inconsistent with Dr. Tressler's assertion that Plaintiff can stand or walk at least two hours in an eight-hour day. (Id. at PageID 37, 498.) Thus, she specifically commented on the consistency and supportability of Dr. Tressler's opinion and appropriately relied on Dr. Tressler's examining opinion. The ALJ identified substantial evidence to support a finding that the Plaintiff did not have a disability during the relevant period. Since there is substantial evidence to support the ALJ's decision, the court must affirm that decision.

### III. CONCLUSION

For the above reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

November 24, 2025
_____
Date